RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
ALEXANDRIA, LOUISIANA
DATE___1_/__11__/_11___
BY_____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| HENRY JAMES | : | DOCKET NO. 09-438 |
| VS. | : | JUDGE TRIMBLE |
| RICHARD SIMMONS, ET AL | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the court is a "Motion for Summary Judgment" (R. #51) filed by defendants, Robert Leonards, Russell Barrios, Jeanette Doucet and Hillary Broussard.  Defendants seek to have the claims made against them dismissed pursuant to Federal Rules of Civil Procedure 56 because there are no genuine issues of material fact for trial and they are entitled to judgment as a matter of law. Plaintiff has not opposed the motion and the time for doing so has now lapsed.

## FACTUAL STATEMENT

On or about September 19, 2006, plaintiff, Henry James was transferred to St. Martin De Porres Residential Center Work Release Program ("Program") operated by CINC[1]. CINC found Mr. James a job working for a contractor in Lake Charles, Richard Simmons, also a defendant in this case. As part of the Program, Mr. James signed a contract with CINC entitled "Conditions of Work Release Agreement" ("Agreement").[2] The Agreement contained conditions or stipulations that Mr.

---

[1] The facility operated by CINC is a work release program which provides inmates with work experience to ease their reintegration into society.

[2] Defendants' exhibit (not numbered or identified), Henry James depo., pp. 31- 32; Exhibit 1 attached to James depo.

James was required to adhere to during his work release.[3]

Mr. James makes the following allegations in his complaint against defendants, Robert Leonards,[4] Russell Barrios,[5] Jeanette Doucet[6] and Hillary Broussard[7]: Mr. James reported an incident he had with a fellow co-worker to Mr. Broussard. The incident involved a co-worker calling Mr. James a "nigger" and an attempt by the co-worker to hit Mr. James with a board. After Mr. James confronted Mr. Broussard about the incident, he "stated that he had spoken with Ms. Dunn about the incident and she stated she was not going to change plaintiff's job and to continue working."[8]

Mr. James complains of problems with his pay. Specifically, in October he did not receive 16 hours of overtime;[9] he reported the shortages to Mr. Simmons.[10] Mr. James mailed an informal complaint to Mr. Barrios requesting a job change because he was not being paid for all hours he worked.[11] Mr. Barrios did not respond to Mr. James' request.[12]

---

[3] Id.

[4] Mr. Leonards is alleged to be a co-owner of CINC. Complaint, ¶ 3 of § "Parties".

[5] Mr. Barrios is alleged to be the Assistant Director of CINC. Complaint, ¶ 4, § "Parties".

[6] Ms. Doucet is alleged to be the head of bookkeeping. Complaint, ¶ 6, § "Parties".

[7] Mr. Broussard is alleged to be the head of security. Complaint, ¶ 7, § "Parties".

[8] Complaint, ¶ 10, § "Complaint".

[9] Complaint, ¶ 15, § "Willfully Taking Hour of Pay/Overtime".

[10] Id.

[11] Complaint, ¶ 16, § "Willfully Taking Hour of Pay/Overtime".

[12] Complaint, ¶ 17, § "Willfully Taking Hour of Pay/Overtime".

On January 1, 2007, Mr. James filled out a "formal complaint" concerning the hours he worked but was not paid, and gave it to Mr. Broussard; Mr. Broussard informed Mr. James that he would give it to Ms. Doucet (head of bookkeeping).[13] The next day, Mr. James "mailed Ms. Doucet a requisition requesting the addresses for the E.E.O.C. and B.B.B."[14] Plaintiff alleges he has not received a response from Ms. Doucet regarding his pay or the requested addresses.[15]

On or about January 31, 2007, Mr. Simmons approached Mr. James to inquire about a phone call his wife had received from the E.E.O.C. Mr. James responded that "[a]ll I want is my money man, the money I worked for."[16] Around this same time a white male from the CINC work program was sent to work for Mr. Simmons at Mr. Simmons' request. On February 19, 2007, Mr. Broussard informed Mr. James that Mr. Simmons no longer needed him.

On February 21, 2007, Mr. James started another job working for Mr. Leonards at "The Shop" on his construction crew.[17] On March 1, 2007, Mr. James informed Mr. Leonards about his pay shortages with Mr. Simmons. On March 12, 2007, Mr. James worked five (5) hours and was sent back to the work release with several other black residents; the white residents were permitted to continue working a full eight (8) hour shift.[18] On March 14, 2007, Mr. James along with other black

---

[13] Complaint, ¶ 18  § "Willfully Taking Hour of Pay/Overtime".

[14] Complaint, ¶ 19 § "Willfully Taking Hour of Pay/Overtime".

[15] Complaint, ¶ 20 § "Willfully Taking Hour of Pay/Overtime". Plaintiff was able to obtain the EEOC address from another source.  Complaint, ¶ 21 § "Willfully Taking Hour of Pay/Overtime".

[16] Complaint, ¶ 25  § "Willfully Taking Hour of Pay/Overtime".

[17] Complaint, ¶ 34  § "Willfully Taking Hour of Pay/Overtime".

[18]   Complaint, ¶ 38  § "Willfully Taking Hour of Pay/Overtime".

residents were sent back to the work release while the white crew members from the work release were allowed to stay and work full eight (8) hour shifts.[19]  On March 16, 2007, Mr. James worked three hours and was approached by Mr. Barrios and Mr. Broussard; Mr. Barrios informed Mr. Broussard to handcuff him and put him in the van.[20]  Mr. Barrios "cracked jokes" about Mr. James to Mr. Broussard and Charles Ethridge.[21]

Mr. James was taken back to CINC and brought before an "emergency disciplinary board" conducted by Mr. Broussard; he was charged with defiance, aggravated disobedience and simple escape.[22]  Mr. James was found guilty and returned to prison.[23]  Mr. James was also brought before the disciplinary board at Hunt Correctional Center and charged with the same offenses; he was found guilty of the aggravated disobedience charge.[24]

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[25]  A fact is "material" if its existence or

---

[19]  Complaint, ¶ 41  § "Willfully Taking Hour of Pay/Overtime".

[20]  Complaint, ¶ 42  § "Willfully Taking Hour of Pay/Overtime".

[21]  Id. (Mr. Ethridge is alleged to be the supervisor of the Shop, Complaint, ¶ 8 § "Parties".)

[22]  Complaint, ¶ 43  § "Willfully Taking Hour of Pay/Overtime".

[23]  Complaint, ¶ 44  § "Willfully Taking Hour of Pay/Overtime".

[24]  Complaint, ¶ 45  § "Willfully Taking Hour of Pay/Overtime".

[25]  Fed. R.Civ. P. 56(c).

4

nonexistence "might affect the outcome of the suit under governing law."[26]   A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[27] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[28] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[29]  The burden requires more than mere allegations or denials of the adverse party's pleadings.  The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[30]  There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[31]  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[32]

## LAW AND ANALYSIS

The court notes that plaintiff is proceeding pro se in the instant lawsuit.  The crux of Mr.

---

[26] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

[27] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).

[28] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

[29] Anderson, 477 U.S. at 249.

[30] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

[31] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

[32] Anderson, 477 U.S. at 249-50.

5

James' claims as found in his "PRELIMINARY STATEMENT"[33] include relief for unpaid wages while employed for Mr. Simmons, racial discrimination, and retaliatory discharge by Mr. Simmons. Unfortunately, Mr. James has not responded to the motion for summary judgment. As such, Mr. James has presented no summary judgment evidence to dispute the evidence submitted by defendants, and he has asserted no countervailing arguments of law.

*Unpaid wages*

Mr. James' complaint seems to seek relief for unpaid wages from defendants, Leonards, Barrios, Doucet and Broussard, as employees of CINC. Defendants maintain that they were not responsible for ensuring that Mr. James was paid the proper wages.

CINC is a work release program for inmates of any jail or prison under the jurisdiction of the sheriff of each parish; it is authorized by Louisiana Revised Statute 15:711. Neither the sheriff, nor CINC, is an employer of an inmate who works in a work release program for a private employer outside of the jail.[34] Instead, the inmate is an employee of the private employer.[35] The courts have upheld contracts between an inmate and a work release program such as CINC.[36]

Defendants have submitted the Agreement signed by Mr. James as summary judgment evidence. Defendants rely on paragraph 13 in the Agreement which states as follows:

> 13. I understand that the St. Martin de Porres Residential Center will credit my account with wages earned and send me a receipt for them together with a stub or other statement of deductions made by my

---

[33] Complaint, R. #1.

[34] Reimoneng v. Foti, 72 Fed. 3d 472 (5th Cir. 1996).

[35] Clinton v. Reigel By Products, Inc., 965 So.2d 1006 (La.App. 2d Cir. 2007).

[36] Reimoneng, 72 Fed. at 478.

employer. I further understand that while the St. Martin de Porres residential Center will endeavor to account for the wages and deductions according to the agreement that it is my responsibility to see that my employer has properly computed wages and deductions. I further agree to endorse any check if necessary, in order that said check can be deposited to my account.

I HEREBY CERTIFY THAT THE ABOVE WORK RELEASE CONDITIONS HAVE BEEN READ AND EXPLAINED TO THE RESIDENT.

Defendants argue based on paragraph 13 of the Agreement that it is abundantly clear that it was not their responsibility to ensure that Mr. James was paid properly, and that the court should enforce the contract as written. As previously noted, Mr. James has not opposed the motion for summary judgment.

The interpretation of a contract is the determination of the common intent of the parties.[37] When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties intent. [38] The words of a contract must be given the general prevailing meaning.[39] The court concludes that the Agreement clearly placed responsibility on Mr. James to make sure his employer paid him the correct wages. Furthermore, Mr. James has not provided this court with any law that would cause CINC, or any of its employees to be responsible for ensuring that Mr. James was paid properly.

*Discrimination*

In his complaint, Mr. James alleges that he was discriminated against and later retaliated

---

[37] La. Civil Code Art. 2045.

[38] La. Civil Code Art. 2046.

[39] La. Civil Code Art. 2047.

against for filing a complaint with the E.E.O.C.  He alleges that he and other black residents were sent back to the work release center prior to their work shift being completed, while other white residents were allowed to work a full eight (8) hour shift.  He also alleges that he was retaliated against by being fired and also by being sent before a disciplinary board and having a false disciplinary report made against him.[40]

In an employment discrimination case alleging disparate treatment, the court's focus is on whether a genuine issue of fact exists as to whether the defendant intentionally discriminated against the plaintiff.[41]  Title VII prohibits employers from discriminating against employees on the basis of their race.[42]  The evidentiary framework for analysis of Title VII disparate treatment claims was established by the Supreme Court in *McDonnell Douglas Corp. v. Green*.[43]  In order to overcome a motion for summary judgment on a Title VII discrimination claim, the plaintiff must first establish, by a preponderance of the evidence, a *prima facie* case of discrimination.[44]

A plaintiff satisfies this initial burden by showing that (1) he belongs to a protected group, (2) he was qualified for the position sought, (3) he suffered an adverse employment action, and (4)

---

[40]  See Complaint, R. #1, "PRELIMINARY STATEMENT".

[41]  *Grimes v. Texas Dept. of Mental Health & Mental Retardation,* 102 F.3d 137, 139 (5th Cir. 1996);  *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444 (5th Cir. 1996).

[42]  42 U.S.C. 2000(e)2(a).

[43]  411 U.S. 792 (1973).

[44]  *Id.* at 802-04;  *Manning v. Chevron Chemical Co.,* 332 F.3d 874 (5th Cir. 2003); *Haynes v. Pennzoil Co.,* 207 F.3d 296, 300 (5th Cir. 2000); *Shackleford v. Dloitte & Touche,* 190 F.3d 398, 404 (5th Cir. 1999).

he was replaced by someone outside the protected class.[45]

Defendants maintain that there is no evidence that plaintiff was not allowed to work a full day or that he was sent home because of his race.  Likewise, there is no evidence submitted to establish that plaintiff was terminated because of his race and/or as a result of retaliation.  Again, plaintiff has failed to respond to the motion for summary judgment.  Mere allegations in the complaint are insufficient to defeat a motion for summary judgment.[46]  Rule 56(e) of the Federal Rules of Civil Procedure "requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "[47]  "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves."[48]

Mr. James has failed to submit any evidence to establish racial discrimination against these defendants.  The court further notes that we fail to see how defendants who are not employers[49] of Mr. James could even remotely be held liable for alleged violations of Title VII.

## CONCLUSION

Based on the foregoing and for the reasons set forth herein, the claims against defendants,

---

[45] Manning, 332 F.3d at 881, citing Price v. Fed. Express Corp., 283 F.3d 715, 720 (5th Cir. 2002).

[46] Celotex Corp., 477 U.S. at 324 (1986).

[47] Id.

[48] Id.

[49] Defendants, Barrios, Broussard and Doucet were not alleged to be employers of Mr. James, only employees of CINC; Mr. James was not an employee of CINC.

9

Robert Leonards, Russell Barrios, Jeanette Doucet and Hillary Broussard will be dismissed with prejudice. The Court determines that there is no just reason for delay and will direct entry of final judgment under rule 54(b) of the Federal Rules of Civil Procedure.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 11ᵗʰ day of January, 2011.

                                        JAMES T. TRIMBLE, JR.
                                        UNITED STATES DISTRICT JUDGE